UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KIMBERLY SHAW, | : | |
| Plaintiff, | : | |
| | : | No. 3:18-CV-00067 (VLB) |
| v. | : | |
| | : | |
| YALE NEW HAVEN HOSPITAL, | : | July 19, 2019 |
| Defendant. | : | |

# MEMORANDUM OF DECISION ON DEFENDANT'S SECOND MOTION TO COMPEL AND REQUEST FOR SANCTIONS [ECF No. 43]

## I.    FACTS

This employment discrimination action was commenced by the Plaintiff, Kimberly Shaw, on January 11, 2018. The Plaintiff is a former employee of the Defendant, Yale New Haven Hospital. Defendant terminated the Plaintiff's employment in June 2016. Plaintiff alleges that her discharge was motivated by racial animus and in retaliation for her complaints about Defendant's conduct in violation of Title VII of the Civil Rights Act of 1964 codified as 42 U.S.C. 2000e, *et al.* ("Title VII") and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. 46a-60, *et seq.*, as well as disability discrimination in violation of the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"), codified as amended at 42 U.S.C. § 12101 *et seq.*, and Connecticut state law.

The Court issued a Scheduling Order in this matter on April 19, 0218. [ECF No. 17]. Pursuant to that Order, the Court set the deadline to complete discovery for February 28, 2019 and the dispositive motion deadline for March 29, 2019.

One day after the Court's Scheduling Order issued, on April 20, 2018, Defendant served Plaintiff with Requests for the Production of Documents, with responses due May 20, 2018. On April 26, 2018, Defendant noticed Plaintiff's deposition for June 14, 2018.

On Monday, May 21, 2018, Plaintiff moved, with Defendant's consent, for a two-week extension to respond to Defendant's Requests for Production, to June 4, 2018, citing the Plaintiff's need for "more time to complete her due diligence and to fully answer in writing under oath all of the Interrogatories and to respond to the Requests for Production." [ECF No. 19 at 1]. The next day the Court granted Plaintiff's motion. [ECF No. 20].

On June 4, 2018, Plaintiff again moved, with Defendant's consent, for a further ten-day extension to respond to Defendant's Requests for Production, to June 14, 2018, citing Plaintiff's need for "more time to complete her due diligence and to fully answer in writing under oath all of the Interrogatories and to respond to the Requests for Production." [ECF No. 21]. In neither instance did Plaintiff comply with Local Rule 7 which requires that a party seeking an extension of time show good cause why in the exercise of dur diligence the party was unable to respond within the time allotted. The next day the Court granted Plaintiff's motion, in deference to the parties' consent. [ECF No. 22].

2

**Considering the new discovery request deadline, June 14, 2018, which coincided with Plaintiff's noticed deposition date, counsel for Defendant informed Plaintiff's counsel that the noticed deposition would have to be postponed to allow time to review Plaintiff's anticipated discovery responses and requested deposition dates in late June 2018.**

**June 14, 2018 came and went with neither service of discovery responses by Plaintiff on Defendant, nor a third motion to extend discovery. On June 18, 2018, Defendant's counsel emailed Plaintiff's counsel, Attorney Michael McMinn, of Axelrod & Associates, LLC, about the lack of discovery responses, and informed Plaintiff's counsel that if such discovery responses were not immediately forthcoming, Defendant would seek the Court's intervention. When Attorney McMinn did not respond, Defendant did so on June 22, 2018 by filing a Motion to Compel Plaintiff's responses to Defendant's April 20, 2018 discovery requests. [ECF No. 23]. Responses to Defendant's Motion to Compel were due July 13, 2018.** *Id.*

**On July 13, 2018, Plaintiff's counsel filed a motion for a two-week extension of time to respond to Defendant's Motion to Compel, until July 27, 2018, citing Plaintiff's counsel's "utter lack of communication from his client," and noting that Plaintiff's counsel intended to file a Motion to Withdraw as counsel for Plaintiff. [ECF No. 24]. Once again, no good cause was shown for Plaintiff's failure to meet her discovery obligations as required by Local Rule 7. In the interest of fairness and the absence of input from Plaintiff, the Court granted Plaintiff's counsel's Motion for Extension on July 16, 2018, noting an apparent breakdown in the**

attorney client relationship, and to afford the Plaintiff an opportunity to resolve the matter and either appear *pro se* or retain other counsel. [ECF No. 25].

On July 31, 2018, four days after Plaintiff's response to Defendant's Motion to Compel were due, Plaintiff filed a second motion for a one-day extension of time to respond to Defendant's Motion to Compel, again citing Plaintiff's counsel's "utter lack of communication from his client," and noting that Plaintiff's counsel intended to file a Motion to Withdraw as counsel for Plaintiff. [ECF No. 26].

On August 1, 2018, Plaintiff filed her Opposition to Defendant's Motion to Compel. [ECF No. 28]. The same day Plaintiff's counsel also filed an *Ex Parte* Motion to Withdraw as Counsel for Plaintiff, citing "Plaintiff's complete failure to communicate with her counsel, preventing him from adhering to multiple court deadlines and preventing him from complying with discovery requests." [ECF No. 27 at 1].

On September 6, 2018, the Court held an *ex parte* teleconference with Plaintiff and Plaintiff's counsel. [ECF No. 30]. During the teleconference the Court discussed Plaintiff's responsibilities should she decide to proceed *pro se*, and Plaintiff counsel's Motion to Withdraw. In reliance on Plaintiff's assurances, given at the teleconference, that she would meet her obligations going forward, the Court found as moot Defendant's Motion to Compel. [ECF No. 36]. Following the hearing, the Court mailed the appropriate forms to proceed *pro se* to Plaintiff

and invited her to return them if she desired to so proceed. She did not, and Plaintiff's counsel, Attorney McMinn, did not withdraw from this action.

On September 10, 2018, the Court referred this action to Magistrate Judge Robert Richardson for a settlement conference. [ECF No. 31]. The conference occurred on November 1, 2018, with Attorney McMinn appearing for Plaintiff. [ECF No. 34]. The case did not settle, although the parties discussed settlement throughout the month of November. [ECF Nos. 35, 37].

On December 2 and 3, 2018, Plaintiff responded to Defendant's April 20, 2018 discovery requests and suggested that Plaintiff would be available for deposition in mid-to-late January 2019. On December 3, 2018, Defendant expressed dissatisfaction with Plaintiff's responses to Requests for Production 30 and 31, which requested information about Plaintiff's job search efforts following termination by Defendant, and Plaintiff's earnings since that time. Defendant requested that Plaintiff's responses be supplemented by December 7, 2018. Defendant also proposed four deposition dates in mid-to-late January 2019, but did not re-notice Plaintiff's deposition.

A discovery teleconference was held with the Court on December 5, 2018. Based on this teleconference on December 6, 2018, the Court once again amended its Scheduling Order to accommodate Plaintiff's failure to respond to discovery timely setting a new discovery deadline of March 29, 2019, and a new dispositive motion deadline of April 30, 2019. [ECF No. 39].

On December 12, 2018, Defendant's counsel asked Plaintiff's counsel, Attorney McMinn, to provide dates for Plaintiff's deposition, but received no response.

On December 28, 2018, Attorney Eugene Axelrod, of Axelrod & Associates, LLC, appeared for the Plaintiff in this action, and Attorney McMinn moved to withdraw, citing his termination of employment with Axelrod & Associates as of January 1, 2019. [ECF Nos. 40, 41]. The Court granted Attorney McMinn's Motion to Withdraw on January 2, 2019. [ECF No. 42].

On December 28, 2018, Defendant emailed Attorney Axelrod about Plaintiff's deposition dates, providing three dates in January, but received no response. Receiving no response from Plaintiff's counsel regarding Plaintiff's deposition or supplemental responses to Defendant's Requests for Production 30 and 31, Defendant filed its second and the *sub judice* Motion to Compel, on January 8, 2019. [ECF No. 43]. The Motion requested the Court compel the Plaintiff to appear for a deposition and produce documents adequately responsive to Requests for Production 30 and 31, *see id* at 5, and award Defendant its attorneys' fees and costs occasioned by Plaintiff's discovery delays. *Id.* at 5-6.

The next day the Court found Plaintiff's counsel's August 1, 2018 Motion to Withdraw, [ECF No. 27], moot. Plaintiff's response to Defendant's Second Motion to Compel were due January 29, 2019, but Plaintiff did not respond.

On February 5, 2019, the court issued an Order to Show Cause requiring Plaintiff to appear on March 13, 2019 and show cause why the relief requested in Defendant's Second Motion to Compel should not be granted and why the case should not be dismissed for failure to prosecute. [ECF No. 45].

At the hearing Plaintiff informed the court she and her family drove from Georgia to attend the hearing and would be driving back to Georgia after the hearing. During the Show Cause hearing, the Court first explained that during the September 6, 2018 *ex parte* teleconference with Plaintiff and Attorney McMinn, it was the Court's understanding that Plaintiff would complete discovery with no further obstacles, yet there were still outstanding document requests as of March 13, 2019, and Plaintiff had yet to be deposed. [ECF No. 55 at 6-7]. Defendant's counsel explained their efforts to depose Plaintiff and receive supplemental responses to Defendant's Requests for production 30 and 31. *Id.* at 8-13.

Defendant's counsel noted that Plaintiff's counsel, Attorney Axelrod, had asked Defendant's counsel to cancel the Show Cause hearing, and had explained Plaintiff's failure to supplement Requests for production 30 and 31 by noting that one of Plaintiff's email accounts had expired, and documents that Plaintiff kept in a storage facility had been sold and were no longer in Plaintiff's possession. *Id.* at 12. When Defendant's counsel stated that ordering Plaintiff's deposition by a date certain, with dismissal resulting should it not occur, the Court stated, "I think that is a very fair request on the defendant's part." *Id.* at 22.

7

**It also came to light during the Show Cause hearing that Plaintiff's counsel had no signed engagement/retainer letter with the Plaintiff, had not received any payment from the Plaintiff for services rendered other than the $400 filing fee, and had not issued a litigation hold letter to Plaintiff at the start of this action, requiring her to preserve relevant documents.[1]** *Id* **at 32-38. Plaintiff's counsel explained that one reason for his trouble with this case was that since the beginning of 2019 he had taken on 50 additional cases and was looking for another attorney.** *Id.* **at 40. Plaintiff's counsel also explained that his firm had represented Plaintiff in a prior action before the Connecticut Commission on Human Rights and Opportunities ("CHRO"), but that Plaintiff had not paid fully for services rendered in that action, which was completed before Plaintiff initiated this action.** *Id* **at 46-47. Plaintiff explained that when the case was filed, she only expected Attorney McMinn to do that and not represent her in this action, and that she was surprised when Attorney McMinn contacted her about discovery responses.** *Id.* **at 52-53.**

**After further discussions related to the parties' discovery efforts, or lack thereof, the Court ordered Defendant's counsel, Plaintiff, and Plaintiff's counsel to file on the docket all correspondence between Plaintiff and her counsel concerning discovery in this case.** *Id.* **at 53-57.**

---

[1]   **Plaintiff did state during the hearing that Plaintiff's counsel did tell her to preserve documents relevant to the litigation but did not make it clear that she should preserve all records of her job search efforts, which is a key issue in this case. [ECF No. 55 at 68-69].**

**Plaintiff, Defendant's counsel and Plaintiff's counsel filed documents related to this action as requested by the Court under seal on March 25 and 26, 2019. [ECF Nos. 50, 52 and 53].[2] These documents confirm the above facts and reveal the following:**

- **Plaintiff and Axelrod & Associates exchanged emails related to Plaintiff's CHRO action in early 2017, but no signed retainer letter appears in either Plaintiff's or her counsel's documents.**

- **Plaintiff opened her present AOL email account on September 21, 2017. There were emails related to Plaintiff's retainer for her CHRO action that were sent to her old email account by Attorney McMinn after that date.**

- **On October 17, 2017, Plaintiff emailed Axelrod & Associates paralegal Karen Dixon and requested a "release of jurisdiction" in her "EEOC" case, asked for Attorney Axelrod to attempt settlement for her for the next 90 days, and said that, if settlement failed, "I would like to proceed to federal court."**

- **On January 8, 2019, Yale made a settlement offer, and then withdrew it on January 10, 2018, stating that Yale might reconsider after Plaintiff filed suit. In response, Plaintiff stated "if Yale is requesting me to proceed to Federal court in order to be compensated for lost wages please draw up the paperwork."**

- **The same day Axelrod & Associates filed the Complaint in this action, January 11, 2018, they emailed Plaintiff a retainer letter entitling the firm to 25% of any settlement and noting that "[i]f law firm is unsuccessful, client understands and agrees [she] will sign a successor agreement to proceed in a court of law." There is nothing on the record indicating this retainer agreement was signed, and no other follow-on retainer agreement was sent to Plaintiff until March 12, 2019, following the court's inquiries into the nature of the relationship and breakdown in communication between Plaintiff and her counsel.**

- **No litigation hold letter was ever sent to Plaintiff.**

---

[2] Plaintiff's counsel filed "Plaintiff's Notice of Compliance" on March 26, 2019, attaching relevant documents, but erroneously filed it on the docket as a "Motion to Seal." [Doc. # 53].

9

- **On January 12, 2018, Attorney McMinn emailed Plaintiff, attaching a copy of the Complaint that had been filed on January 11, 2018.**

- **The next communications between Plaintiff's counsel and Plaintiff occurred on April 25, 2018 when Attorney McMinn emailed Defendant's April 20, 2018 document requests to Plaintiff and on April 27, when Attorney McMinn emailed to Plaintiff a Notice of [her] Deposition. Interestingly, the April 27 email appears in Plaintiff's documents, but the April 25 email does not.**

- **The next communication from Axelrod & Associates to plaintiff occurred on May 21, 2018, in which Attorney McMinn requested Plaintiff call him, to which Plaintiff responded on May 28, 2018.**

- **In June and July 2018, Attorney McMinn emailed Plaintiff numerous times attempting to get her to respond to Defendant's discovery requests and to discuss a settlement offer from Defendant. Plaintiff responded only sporadically and only to state that she would call. A June 15, 2018 email from Attorney McMinn to Plaintiff in Plaintiff's files attached Defendant's discovery requests, including document requests 30 and 31.**

- **On July 18, 2018, Attorney McMinn spoke with Plaintiff, who rejected Defendant's settlement offer and informed Atty McMinn she wished to proceed *pro se*.**

- **On July 30, 2018, Attorney McMinn emailed Plaintiff informing her that he would be informing the Court that Plaintiff would be proceeding *pro se*. He also attached his Motion to Withdraw and asked for her mailing address. On August 3, 2018 Plaintiff responded with her address and asked that Attorney McMinn "make it mandatory that I sign for any documents."**

- **Attorney McMinn emailed Plaintiff on August 23, 2018 with the Court's request for an *ex parte* teleconference regarding Attorney McMinn's Motion to Withdraw. Having heard nothing, the Court's clerk emailed Plaintiff directly on August 31, 2018 regarding the upcoming teleconference.**

- **After the September 6, 2019 teleconference, no further correspondence between Plaintiff and Attorney McMinn occurred except for emails to coordinate Plaintiff's attendance at the November 1, 2018 settlement conference.**

- **On November 14, 2018, Attorney McMinn sent Plaintiff the documents of Plaintiff's that Attorney McMinn had served on Defendant on June 12, 2018. This email attached Plaintiff's production to date, KS1-65. He also, in a separate email, re-sent Defendant's Requests for Production and stated**

10

that these were "the questions we have to respond to," but this email does not appear in Plaintiff's records.

- On November 30, 2018, Plaintiff received W-2s and work contracts from her 2016 and 2017 employer, AMN Healthcare, and forwarded these to Attorney McMinn. The contracts were for two temporary jobs she had taken following her termination by Defendant, one from August 22, 0216 to November 19, 2016, and one from November 28, 2016 to February 25, 2017.

- On December 3, 2018 Plaintiff's counsel produced Plaintiff's W-2s and the two employment contracts to Defendant, Bates stamped KS66-143. The same day Defendant's counsel asked for deposition dates for Plaintiff and requested supplementation to Requests for Production 30 and 31. Attorney McMinn responded that he spoke to Plaintiff and she could be deposed in mid-to-late January, and asked for dates, to which Defendant's counsel proposed four dates in mid-January. Attorney McMinn stated he would check with Plaintiff.

- On December 12, 2018, Defendant's counsel warned Attorney McMinn that if they did not get a firm response on Plaintiff's deposition date by December 14, they would seek Court intervention. Attorney McMinn never responded.

- On December 28, 2018, Defendant's counsel emailed Attorney Axelrod and filled him in on their communications with Attorney McMinn regarding Plaintiff's deposition and warned that if they did not hear back by January 2, 2019, they would seek Court intervention. As noted, they did so on January 8, 2019, and on February 5, 2019 the Court ordered the previously discussed Show Cause hearing to occur on March 13, 2019.

- The next written communication between Axelrod & Associates and Plaintiff occurred on February 26, 2019, when firm paralegal Anne D'Addio asked Plaintiff to contact her as soon as possible regarding her case. Earlier that day Defendant's counsel had spoken to and emailed Paralegal D'Addio about Plaintiff's lack of supplementation of Requests for Production 30 and 31.

- The next day, February 27, 2019, another firm paralegal, Cynthia Carraway, emailed Plaintiff telling her that (i) she still owed $1,250 for the firm's CHRO filing on her behalf, (ii) she owed $6,500 plus "disbursements, costs and fees" for this action per a required "Federal Court Retainer," (iii) she had not communicated "with the attorney" since July 2018, and (iv) her failure to communicate with the firm had placed her and the firm in "great legal jeopardy." This email also quoted the firm's retainer about contingency fees, but the retainer had never been sent to Plaintiff.

- On February 28, 2019, Plaintiff responded to Paralegal Carraway that she had spoken with Paralegal D'Addio, who informed her that Attorney McMinn had left the firm. She also stated that she believed she was up-to-date on her legal fees and forwarded emails between Attorney McMinn and herself from September 2018.

- On March 7, 2019, Paralegal D'Addio forwarded the Court's February 5, 2019 Order to Show Cause to Plaintiff for the first time. The same day Plaintiff stated in an email that she would attend the Show Cause hearing and asked if there were any other documents she needed to produce in advance of the hearing.

- Later that day Plaintiff responded to paralegal D'Addio, stating that she had spoken with Attorney Axelrod, and that he promised to send an email with documents she needed to produce. Although Axelrod & Associates' documents show that Attorney Axelrod sent same that day at 6:17 p.m., that email does not appear in Plaintiff's documents.

- On March 7, 2019, Attorney Axelrod wrote a memorandum to file regarding his telephone call with Plaintiff, in which he stated that he explained to her the documents he needed, asked her for three deposition dates because they were "required" by the Order to Show Cause, and that she was in arrears in payment to Axelrod & Associates, which she denied.

- On March 11, 2019, Plaintiff transmitted her 2018 W-2 to Axelrod & Associates along with her two temporary employment contracts she had previously provided and a CHRO document. She also provided three deposition dates in March and April 2019 and provided a written general statement regarding her employment history after Defendant terminated her. This included information about her previous email account expiring and the documents she had that might be relevant to this action being sold in a storage company auction.

- On March 12, 2019, for the first time, Axelrod & Associates sent Plaintiff a letter of representation for this action. The retainer was on Axelrod & Associates letterhead, and required a $6,500 non-refundable fee, and had a contingency fee schedule of one-third of any settlement proceeds or 40% of any trial proceeds required to be paid to the firm. In the email attaching the draft retainer, Paralegal D'Addio stated: "You were sent a retainer that you have not signed, nor have you paid the retainer, and no payment arrangements have been made." Plaintiff responded that she had spoken to Attorney Axelrod "about him representing me for my federal case and signing a retainer" with a payment plan.

- Later, on March 12, 2019, Attorney Axelrod sent Plaintiff a lengthy email in which he berated her about her inadequate document production, stating

> that it was "shocking in its scarcity of documentary compliance" and that "[t]he importance of your substantive, full compliance was made absolutely clear to you." He also stated that the firm was considering requesting to withdraw.

The tenor of the communication between Plaintiff and the firm representing her was that the attorneys and paralegals at the firm repeatedly attempted to prompt her to comply with her discovery obligations to no avail and that Plaintiff only responded under extreme pressure and then only partially. It was also apparent that the Axelrod firm was only retained by Plaintiff to represent her before the CHRO and later at a settlement conference and was not retained or paid to represent her in the federal action, despite the fact that the firm filed the case and its attorneys entered unlimited appearances. Finally, it was apparent Plaintiff took no steps to represent herself, despite her repeated statements she intended to do so and her representations to the court she intended to proceed *pro se*.

Plaintiff's deposition was neither re-noticed or taken, despite the close of discovery on March 29, 2019. On April 30, 2019, Attorney Axelrod moved to withdraw. [ECF No. 61]. On May 13, 2019, the Parties filed a Joint Motion to Extend all Deadlines, requesting an extension until July 27, 2019 to complete discovery, and a new dispositive motion deadline of August 28, 2019. [ECF No. 62]. The Court granted that motion on May 16, 2019. [ECF No. 64].

On July 9, 2019, in a short, two-page Order, this Court granted Attorney Axelrod's Motion to Withdraw, and granted Defendant's Motion to Compel, ordering Plaintiff to submit to a deposition and respond to Defendant's Document Requests Nos. 30 and 31 by August 28, 2019. [ECF No. 69]. This Memorandum of

Decision explains the basis for that Order and modifies the procedure for deposing Plaintiff and obtaining responses to Document Requests Nos. 30 and 31.

II.  **DISPUTED ISSUES**

Plaintiff has not opposed the Defendant's Second Motion to Compel. In opposing Defendant's first Motion to Compel, Plaintiff's counsel made admissions that Plaintiff failed to communicate with her attorney and in so doing prevented the firm from prosecuting the case. Specifically, counsel stated that his admitted lack of compliance with Defendant's discovery requests should not result in sanctions because his behavior was "substantially justified" in that "Plaintiff's Counsel has acted in good-faith and due diligence, to the best of his ability, given his client communication issues." [ECF No. 28 at 4]. This line of reasoning was echoed by Attorney Axelrod at the Show Cause hearing, where he largely blamed his own client for the discovery shortcomings at issue in this Motion to Compel.

III.  **LEGAL STANDARDS**

"A party may, by oral questions, depose any person, including a party, without leave of court except as provided in Rule 30(a)(2) [inapplicable here]." Fed. R. Civ. P. 30(a)(1). A defendant in a civil action is entitled to depose the party that filed suit against it. *See, e.g., Bagley v. Yale Univ.*, No. 3:13-CV-1890 (CSH), 2016 WL 1170912, at *1 (D. Conn. Mar. 24, 2016) ("It would be contrary to the natural order of things to ask Defendants to go to trial in a case of this sort

without having been able to depose the Plaintiff."); *Chiu v. Au*, No. 3:03-CV-1150 (RNC), 2005 WL 2452565, at *4 (D. Conn. Sept. 30, 2005) ("[D]efendants are well within their rights to insist on having an opportunity to depose the plaintiff face-to-face."); *see also Scribner v. Ocean State Jobbers, Inc.*, No. 3:14-CV-01486 (AWT), 2016 WL 4926410, at *2 (D. Conn. Sept. 14, 2016) (affirming that defendant "has the right to depose all 57 plaintiffs" who opted-in to the lawsuit).

The deponent's attendance at a NOTICED deposition "may be compelled by subpoena under Rule 45." Fed. R. Civ. P. 30(a)(1). *See Richardson v. Morgan*, No. 3:07-cv-940-J-32TEM, 2008 WL 5170607, at *1-2 (M.D. Fla. Dec. 9, 2008) (quoting Rule 30(a)(1) and ordering deposition of *pro se* plaintiff by date certain); *In re Cole*, Nos. 12-62586, 13-6075, 2013 WL 5964010, at *2 (N.D. Ohio Bankr. Nov. 8, 2013) (noting that plaintiff who noticed defendant's deposition and then issued subpoena for same "met its duty under" the local rules to obtain defendant's deposition). In addition, a

> command to produce documents, electronically stored information, or tangible things or to permit the inspection of premises may be included in a subpoena commanding attendance at a deposition, hearing, or trial, or may be set out in a separate subpoena. A subpoena may specify the form or forms in which electronically stored information is to be produced.

Fed. R. Civ. P. 45(a)(1)(C).

Rule 37 provides recourse where a party fails to meet their discovery obligation. Specifically, Rule 37(a)(1) provides that "[o]n notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery." More specifically, "[a] party seeking discovery may move for an

15

order compelling an answer, designation, production or inspection if …. (i) a deponent fails to answer a question asked under Rule 30 or 31; or (iv) a party fails to produce documents . . . as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B).

The lack of information necessary to answer an interrogatory or a document responsive to a request for production does not absolve a party from responding to the inquiry or request. Where a party does not possess that which is sought to be produced or does not know the answer to an interrogatory, she must state that fact in her response to the discovery request and sign it under penalty of perjury. *Vlasich v. Fishback*, No. 1:05-cv-01615, 2009 WL 10696469, at *5 (E.D. Cal. Mar. 19, 2009) (ordering plaintiff who could not respond to discovery to state same "under penalty of perjury."). A party who fails to provide a response is precluded from offering such information at trial. *See* Rule 37(c)(1) ("If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."); *see also King-Hardy v. Bloomfield Bd. Of Educ.*, No. 3:01-cv-979 (PCD), 2002 WL 32506294, at *3, 5 (D. Conn. Dec. 8, 2002) (noting that "a party failing to produce documents which are the subject of a discovery order may be precluded from presenting the same at trial," and ruling that "[p]laintiff is therefore precluded from presenting evidence at trial not produced in response to the document requests.").

Rule 37(d) governs depositions specifically. Under Rule 37(d)(i) if a party fails, after being served with proper notice, to appear for that person's deposition the court where the action is pending may, on motion, order sanctions. Fed. R. Civ. P. 37(d)(1). On April 26, 2018, Defendant noticed Plaintiff's deposition for June 14, 2018. Prior to the deposition date, Plaintiff had failed to fully respond to Defendant's discovery requests. The parties requested and the court granted an extended discovery deadline. In recognition of the new discovery deadline, counsel for Defendant informed Plaintiff's counsel that the noticed deposition would have to be postponed to allow time to review Plaintiff's anticipated discovery responses. Defense counsel asked Plaintiff's counsel for deposition dates in late June 2018, but none were provided. Defendant's counsel did not serve a second notice of deposition. Thus, Plaintiff did not fail, after being served with proper notice, to appear for her deposition and Defendant is not entitled to sanctions.

Technicality nonetheless, the court finds Defendant's failure to notice Plaintiff's deposition a second time was due to Plaintiff's failure to communicate with her attorney thus frustrating Defendant's right to depose her. Accordingly, the court ordered her to cooperate with scheduling a deposition and set a final date at Defendant's counsel's convenience for her to submit, barring which the case would be dismissed for persistent failure to prosecute.

Upon granting a motion to compel, a court "must" award the moving party "reasonable expenses incurred in making the motion, including attorney's fees," unless the court finds that the opposition to the motion was "substantially

justified" or that "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A). *See Bourke v. Man Engines & Components, Inc.*, No. 3:14CV843, 2016 WL 730696, at *1 (D. Conn. Feb. 23, 2016) (ordering plaintiffs to pay defendant's attorneys' fees and costs in connection with motion to compel plaintiff's deposition and other discovery); *Spencer v. Kenny*, No. 3:11-CV-50, 2015 WL 6958009, at *2 (D. Conn. Nov. 10, 2015) ("Defendant has not met his burden of establishing that his failure to comply with plaintiff's discovery requests was 'substantially justified' or that there exist 'other circumstances [that would] make an award of expenses unjust.' Under these circumstances, the court is constrained to award fees."); *Komondy v. Gioco*, No. 3:12-CV-250, 2015 WL 1311314, at *3-4 (D. Conn. Mar. 23, 2015) (ordering attorneys' fees and costs to defendant who moved to compel plaintiff's responses written discovery).

"If the plaintiff fails to prosecute or to comply with these [federal] rules [of civil procedure] or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits." Fed. Rule Civ P. 41(b). *See Hunter v. N.Y. Dep't of Corr. Servs.*, 515 F. App'x 40, 43 (2d Cir. 2013) (affirming dismissal with prejudice when plaintiff failed to prosecute the case and was repeatedly put on notice that the district court would "dismiss this action with prejudice for failure to prosecute."); *Theilmann v. Rutland Hospital, Inc.*, 455 F.2d 853, 855-56 (2d Cir. 1972) (affirming dismissal with prejudice when there were "unnecessary

**delays in preparation, lack of attention to the case, [and] undue procrastination by party [and] counsel.").**

**IV.     ANALYSIS**

**Plaintiff failed without asserting any cause why she has utterly failed to prosecute this case. She has failed to show as required good cause for the extensions of time she has requested to respond to discovery. D. Conn. L. Civ. R. 7. She failed to show good cause for failing to communicate with her attorney and to produce for her counsel's production responses to Defendant's interrogatories and requests for production. Nor has she shown why she has not prosecuted the case herself if she did not want to be represented by counsel as she has stated. While Plaintiff made an extraordinary effort to appear at a hearing to avert a dismissal and appeared for a settlement conference, she has otherwise virtually neglected and failed to prosecute this case.**

**Defendant has been stymied in its efforts to conduct discovery and defend the case but has not used all tools at its disposal to compel compliance and qualify for an order to compel Plaintiff's deposition, which has not been noticed. Counsel's failure was based on its understandable good faith belief that Plaintiff would cease her obstreperous behavior and diligently prosecute the case, which has not occurred. Such an extension of courtesy should be rewarded not punished.**

**Accordingly, the court sets the following FINAL discovery deadlines. It is ordered that:**

1. Defendant to notice the Plaintiff's deposition to occur within 70 days of the date of this order.

2. Defendant is also ordered to serve Plaintiff personally with a final set of interrogatories and requests for production.

3. Plaintiff is ordered to respond to fully Defendant's interrogatories and requests for production within 28 days of the date of service.

4. If Plaintiff fails to respond fully and completely to discovery or fails to appear for and submit to deposition, the court will entertain a motion to dismiss the case pursuant to Federal Rule of Civil Procedure 41(b).

5. In view of Plaintiff's persistent lack of diligence and the court's repeated admonitions that the case would be dismissed if Plaintiff persisted in her refusal to prosecute the case, the dismissal is likely to be with prejudice which means the court would not reopen the case.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: July 19, 2019.